IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | DOCKET NO. 1:06-CR-66-MEF |
| : | |
| JEFFREY HOWARD STAYTON and : | |
| WILLIAM CURTIS CHILDREE, : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION FOR PROTECTIVE ORDER**

Plaintiff, United States of America, by and through its counsel, respectfully opposes the Defendants' Motion for Protective Order, filed on July 26, 2007, and, in support, represents the following:

1.  On July 17, 2007, counsel for William Childree ("Childree") provided the undersigned with copies of a document that purports to be a January 9, 2002 handwritten letter ("the Letter") from Jeffrey Stayton ("Stayton") to Childree. (Appendix A.) In the Letter, Stayton characterizes as a loan the $61,071.75 payment that he received from Childree. Counsel for Childree informed the undersigned that Childree only recently discovered the letter in his home after conducting a search of historical contract documents in connection with Maverick Aviation's prior work on government contracts, including the one at issue in this case.

2.  In a July 19, 2007 letter to counsel for Childree, the United States requested that Childree provide for inspection by the United States, pursuant to Federal Rule of Criminal Procedure

16(b)(1)(A), the original letter, as well as any related materials, including the envelope in which the letter was allegedly received. (Appendix B.)

3.      Childree's production of the Letter to the United States—well after the April 12, 2006 deadline imposed by the Court in its Order on Arraignment for such disclosures and mere months before trial of this matter—is suspicious, at best, particularly in light of the following:

      a.      On June 19, 2003, the Department of Defense, Office of Inspector General issued a subpoena to the Custodian of Records for Maverick Aviation requesting, among other things, for the period September 1, 2001, through May 1, 2003, "[a]ny and all documents pertaining to monetary payments made by Maverick Aviation to, or for the benefit of any/all personnel who participated in the mission to Russia . . . in support of the identified contract." (DoD-IG Subpoena of 6/19/03, at 4.) In his July 30, 2003 response, and emphasizing his "extensive effort to comply with your request for production," Childree disclosed several documents but failed to provide the Letter or indicate that the Letter existed, but was unavailable. (Letter from Hartwick to Balentine of 7/30/03, at 1.)

      b.      On January 31, 2005, a grand jury subpoena issued to Childree requesting, among other things, "[d]ocuments and tangible objects relating to Jeffrey Howard Stayton, including but not limited to, any payments made to or on behalf of Jeffrey Howard Stayton." (G.J. Subpoena of 1/31/05, ¶ 10.) In response to this letter, Childree failed to provide the Letter or indicate that the Letter existed, but was unavailable.

      c.      On March 24, 2005, a grand jury subpoena issued to Stayton requesting, among other things, "documents and tangible objects regarding Stayton's business dealings and financial transactions, including any payments of or toward Stayton's home mortgage or other debts."

(G.J. Subpoena of 3/24/05, ¶ 3.) In response to this subpoena, Stayton failed to provide the Letter or indicate that the Letter existed, but was unavailable.

  d. On September 3, 2002, investigative agents interviewed Stayton in connection with the events at issue in this case. Although Stayton identified various payments made to him by Childree in connection with the contract (including $10,000 in cash and at least one wire payment of $9,900), he did not disclose his receipt from Childree of a $61,071.75 payment or the Letter that makes reference to this payment. In fact, Stayton denied receiving <u>anything</u> of value, including money, from Childree as a result of the contract.

  e. Investigative agents interviewed Stayton on October 31, 2002, during which he was again asked about money he had received from Childree in connection with the contract. Stayton again failed to disclose his receipt from Childree of a $61,071.75 payment or the Letter that makes reference to this payment.

  f. Investigative agents also interviewed Childree in connection with the events at issue in this case. In a wide-ranging interview on June 24, 2003, Childree described for these agents his work with Stayton on the contract. Childree discussed various payments he made to Stayton during the pendency of the contract, including $10,000 while Stayton was in the United States and a later $6,000 wire transfer to Stayton while he was out of the country. At no time during this interview, however, did Childree disclose that he had paid Stayton $61,071.75 or received the Letter from Stayton that makes reference to this payment.

  g. On June 1, 2005, investigative agents interviewed Stayton for a third time. When asked about payments made by Childree to him in connection with the contract, Stayton again failed to disclose his receipt of a $61,071.75 payment. Only at the conclusion of the interview,

3

when the agents specifically asked him about payments made toward Stayton's home mortgage and confronted him with evidence of such a payment did Stayton admit that Childree had wired $61,071.75 to a third-party to satisfy the outstanding amount on Stayton's mortgage. Only then did he characterize the payment as a loan, and only after further questioning did he offer that he had written Childree "a note, more of a thank you letter, saying that he would repay it." To date, Stayton has never provided the United States with a copy of the Letter.

  h. On March 24, 2006, shortly after the indictment of both defendants and in compliance with the Court's Order on Arraignment, the United States provided both defendants with Rule 16 discovery, thus triggering defendants' reciprocal discovery obligations. Neither defendant provided a copy of the Letter or indicated that the Letter existed, but was unavailable.

4. In light of the suspicious circumstances of the Letter's production, the United States seeks to inspect the <u>original</u> document to conduct such tests as necessary to determine its authenticity. The United States has confirmed that such tests will require approximately three to six weeks to complete.[1]

5. The Federal Rules of Criminal Procedure expressly provide that "the defendant <u>must</u> permit the government, upon request, to inspect and to copy" writings within the defendant's possession, custody, or control, and which the defendant intends to use in its case-in-chief. Fed. R. Crim. P. 16(b)(1)(A) (emphasis added).

---

[1] Any suggestion by defendants that the time needed by the United States to conduct such testing would adversely impact trial scheduling in this case should also be rejected, as defendants alone are responsible for the late disclosure of the Letter. Had defendants timely disclosed the document, the United States could have completed any inspection well in advance of trial. Defendants cannot be permitted to disclose a document mere months before trial only then to argue that the United States should be restricted in inspecting the document to avoid any resulting delay.

6. Defendants now attempt to avoid the reach of this rule by seeking a protective order to restrict the United States' inspection of the original document in this case. Defendants have not, however, demonstrated the requisite "good cause" to support such an order, Fed. R. Crim. P. 16(d)(1), nor have they even attempted to establish that their disclosure of the document is not compelled by the plain language of Rule 16(b)(1)(A). Instead, defendants merely allege, without elaboration, their "concerns about the procedure for inspection which the government directed in its request for the production of the original document for inspection," and challenge the United States' alleged failure to provide any "description or mention of steps the government would take, or procedures that it would observe to preserve the document in its original form, something both Mr. Stayton and Mr. Childree believe is essential." (Defs.' Mot. for Prot. Order, at 1-2.)

7. Defendants have provided no explanation for why it is "essential" to preserve the document "in its original form." As a threshold matter, the United States has confirmed that none of the tests it intends to conduct will completely destroy or even significantly damage the original document. At worst, some small portion of the document may be removed for testing. But even assuming that the Letter was modified slightly by the tests and defendants insisted on using a wholly unaltered form of the Letter at trial, they have made no effort to explain why a copy of the Letter would not suffice. Under such circumstances, the United States would obviously raise no challenge to defendants' use of a duplicate at trial, assuming, of course, that the Letter is itself admissible.[2] Fed. R. Evid. 1003.

---

[2] On the question of admissibility, which the United States may address in a separate motion in limine, defendants' insistence on preserving the original document for use at trial is curious given that the Letter—in original or duplicate form— is inadmissible, self-serving

8.  Perhaps recognizing their inability to make either of these showings, defendants erroneously seek to shift the burden to the United States to make a threshold showing of the manner by which it intends to conduct the inspection of the document <u>before</u> the original document should be disclosed.  Nothing in the law of this Circuit supports such an interpretation of Rule 16(b)(1)(A).  Defendants alone have the burden of establishing, in the first instance, why the Letter is not subject to the plain language of Rule 16(b)(1)(A) <u>requiring</u> disclosure of the original for inspection, and, secondarily, why good cause exists in this case to support the issuance of a protective order.  They have failed to make either showing, and their motion therefore must be denied.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| William M. Welch II<br>Chief<br>Public Integrity Section<br><br>BY: <u>s/ Shaun M. Palmer</u><br>Shaun M. Palmer<br>Matthew L. Stennes<br>Trial Attorneys<br>Criminal Division, Public Integrity Section<br>10th Street & Constitution Avenue, NW<br>Washington, DC 20530<br>Phone: (202) 514-1412<br>Fax: (202) 514-3003<br>Email: shaun.palmer@usdoj.gov | Mariclaire Rourke<br>Trial Attorney<br>U.S. Department of Justice<br>National Security Division<br>Counterespionage Section<br>10th St. & Constitution Ave., NW<br>Washington, DC 20530<br>Phone: (202) 514-1187<br>Fax: (202) 514-2836<br>Email: mariclaire.rourke@usdoj.gov |

---

hearsay.  Its only arguably admissible use at trial would be as a prior consistent statement if and only if Stayton testified at trial and his credibility on this issue were challenged.  Fed. R. Evid. 801(d)(1).

## CERTIFICATE OF SERVICE

I hereby certify on this 31st day of July 2007, that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen R. Glassroth, Esq.
The Glassroth Law Firm, P.C.
615 South McDonough Street
Montgomery, AL  36101
(334) 263-9900

Joseph P. Van Heest, Esq.
Law Office of Joseph P. Van Heest, LLC
402 South Decatur Street
Montgomery, AL  36104
(334) 263-3551.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| William M. Welch II<br>Chief<br>Public Integrity Section | Mariclaire Rourke<br>Trial Attorney<br>U.S. Department of Justice<br>National Security Division<br>Counterespionage Section |
| BY:  s/Shaun M. Palmer<br>      Shaun M. Palmer<br>      Trial Attorney<br>      Criminal Division<br>      Public Integrity Section<br>      10th Street & Constitution Avenue, NW<br>      Washington, DC 20530<br>      Phone: (202) 514-1412<br>      Fax: (202) 514-3003<br>      Email: shaun.palmer@usdoj.gov | 10th St. & Constitution Ave., NW<br>Washington, DC 20530<br>Phone: (202) 514-1187<br>Fax: (202) 514-2836<br>Email: mariclaire.rourke@usdoj.gov |